## T. F. GREENLEE v. J. J. MOSNAT, Appellant.

**Accord and Satisfaction:** JURY QUESTION. In an action by a client against his attorney to recover money collected by the attorney on the client's insurance policies, the attorney pleaded, and introduced testimony tending to show, that there was a dispute as to the amount of the attorney's fees for the collection, the client asserting that the agreement provided for a fee of 10

116  535
120  186
116  535
s126 331
116  535
143  180

per cent. on the amount collected, while the attorney denied this, and claimed a larger sum; that afterwards the client came to the attorney's office, and wanted the money collected on the policies; that the attorney offered to give a check for what he claimed was due; that the client stated that this would make a considerable sum for the attorney's charges; that the attorney explained what work had been done, and that, if the client would take the amount designated in satisfaction, he could do so,—otherwise that he might leave it; that the client took the amount. *Held*, that the debt to plaintiff, which was unliquidated, was satisfied by the acceptance of the check,—its acceptance also involving the acceptance of the condition, and therefore this defense should have been submitted to the jury.

*Appeal from Benton District Court.*—HON. G. W. BURN-HAM, Judge.

WEDNESDAY, MAY 14, 1902.

THE plaintiff employed defendant to collect the indemnity owing him on five policies of insurance, which the latter succeeded in accomplishing, after extended litigation. See *Greenlee v. Insurance Co.,* 102 Iowa, 427; *Greenlee v. Insurance Co.,* 102 Iowa, 260; *Greenlee v. Insurance Co.,* 103 Iowa, 484; *Greenlee v. Insurance Co.,* 104 Iowa, 481. The claim against the Dubuque Fire & Marine Insurance Company was determined by the decision first mentioned. On the four policies other than that of the Hanover Insurance Company the defendant had collected, November 12, 1897, the sum of $16,083.57. Of this he then paid a lienholder $6,700, and plaintiff $2,500. November 20th following he paid plaintiff $4,004.75, and in his answer pleaded that this involved a full settlement for his services. June 15, 1898, he received from the Hanover Insurance Company $2,461.51, which, less $18.18 for expenses, he turned over to plaintiff. The object of this action was to recover the difference between 10 per cent. of the amount collected, alleged to be the compensation that defendant was to receive, and the amount by him retained. Verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Tom H. Milner, C. Nichols,* and *J. J. Mosnat* for appellant.

*C. W. E. Snyder* and *Gilchrist, Whipple & Montgomery* for appellee.

LADD, C. J.—Whether defendant agreed to collect the amounts owing plaintiff on the policies of insurance for a compensation of 10 per cent. of the amount received..was in dispute, and was the only issue submitted to the jury. The defendant pleaded an accord and satisfaction, and testified, in substance, that on November 12, 1897, Greenlee first inquired what his charge would be, and was told that Mosnat would retain the accrued interest as compensation for his services, and pay over the face of the policies; that a few days afterwards Greenlee asserted that the charge was to be 10 per cent. of the amount collected, and demanded payment of all save such percentage; that this was denied by himself, was untrue, and payment refused; that, on the twentieth of November following, Greenlee came to his office and said he guessed he would take the money, and wanted to know how much it was, and Mosnat responded, "I will give you a check of $4,004.75 in full of what is due you, and if you want to take it, and call it square, you can have it," to which Greenlee replied it was charging him considerable, and that thereupon Mosnat explained how much he had done; that Greenlee responded, "give me the check;" that he told Greenlee the amount of the check was all he would give him, and, if he wanted to accept that in satisfaction, he could take it,—otherwise he might leave it; and that Greenlee took the check, and one for $50, which he had advanced. The amount retained was $2,878.82, whereas 10 per cent. of all then collected would have been but $1,608.35. If that subsequently paid by the Hanover Insurance Company be included, $18.18 should be added to the first sum, and $246.15 to the last. According to the defendant's testimony, then, which

the jury may have accepted, there was a dispute as to which of two amounts he was entitled as compensation for his services, and the controversy was adjusted by paying over all save what he claimed. It is not important that the jury decided the contention as to the agreement in favor of the plaintiff. That indicated merely what he might have recovered, had he resorted to an action at the outset: If there was a valid compromise, the law will not inquire into the merits of the respective claims. Nor does such finding, as suggested by appellee, determine that the compensation to be paid for defendant's services was liquidated, within the meaning of the law relating to accord and satisfaction. "If there be a *bona fide* dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum in satisfaction of the entire claim." *Chicago, M. & St. P. Ry. Co. v. Clark,* 178 U. S. 354 (20 Sup. Ct. Rep. 924, 44 L. Ed. 1099). As related to the subject of accord and satisfaction, the term "liquidated," as applied to a claim, means one where the amount due has been ascertained and agreed upon by the parties, or is fixed by operation of law. *Kercheval v. Doty,* 31 Wis. 485; *Hargroves, v. Cooke,* 15 Ga. 321; *Treat v. Price,* 47 Neb. 875 (66 N. W. Rep. 834); 1 Cyc. Law & Proc. 334. When not so determined, it is the subject of compromise. To avoid any confusion in the definition of the word, the books quite generally refer to disputed as well as unliquidated claims as those which may be adjusted without full payment. In *Nassoly v. Tomlinson,* 148 N. Y. 326 (42 N. E. Rep. 715, 51 Am. St. Rep. 695), the court touched several of the points argued by appellee in this case: "A demand is not liquidated, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of the term as applied to the subject of accord and satisfaction. Such is the case before us, as appears from the testimony

of plaintiff already quoted. He claimed that the defendants owed him the sum of $1,500, under the agreement to pay him at one rate, while the defendants claimed that they owed him but $300, under an agreement to pay him at another rate. The verdict of the jury upon this issue neither removed from the case the fact that a dispute existed, nor affected its force, as otherwise the compromise of a disputed claim could never be made the basis of a valid settlement." True, a dispute cannot be raised for the mere purpose of extorting money. It must be in good faith. "A mere false claim,—a sham one,—set up without any colorable pretense or plausible foundation, might not come within the terms or definition of a 'compromise,' and might not sustain it. Characterized by bad faith, the preferring of such a claim would itself be a fraud; and concessions made or rights yielded on the strength of it would not be lost, nor the settlement be a bar." *Kercheval v. Doty*, 31 Wis. 485. But it cannnot be said, as a matter of law, that the contention of defendant was not in good faith. The *bona fides* of the controversy was for the jury to determine. Though the transactions were between attorney and client, the latter was fully informed of all the facts, and no deceit whatever was practiced. They were on equal footing, dealing in the matters, not in litigation, but with the fruits of litigation, and the subject was as fully within the comprehension of one as the other. While the law wisely guards the client against undue advantage in his dealings with his attorney, we know of no reason for precluding them, when on equal footing, from adjusting their differences with the same force and effect as though the relation did not exist. If money on which the attorney had a lien was withheld, this would not amount to duress, as it might have been released upon the execution of a bond, or payment compelled upon summary proceedings. *Foss v. Cobler,* 105 Iowa, 733; section 322, Code. See *Manning v. Poling,* 114 Iowa, 20. At most, the retention of more than that claimed as compensation was a circumstance

bearing on the *bona fides* of the dispute. The language of
*U. S. v. Child,* 12 Wall. 232 (20 L. Ed. 360), is pertinent:
"The authorities are cited to show that where, under peculiar
circumstances, property is held from the owner, and he is
forced to pay some unjust demand to obtain possession of it,
he can afterwards maintain a suit for the money so paid.
No case can be found, we apprehend, where a party who,
without force or intimidation, and with a full knowledge of
all the facts of the case, accepts, on account of an unliqui-
dated and controverted demand, a sum less than what he
claims and believes to be due him, and agrees to accept that
sum in full satisfaction, has been permitted to avoid his act
on the ground that this is duress. If the principle contended
for here be sound, no party can safely pay by way of com-
promise any sum less than what is claimed of him for the
compromise will be void, as obtained by duress. The com-
mon and generally praiseworthy procedure by which business
men every day sacrifice part of claims which they believe to
be just, to secure payment of the remainder, would always
be duress, and the compromise void." Of course such an
agreement, to be valid, must be supported by a new consider-
ation. Hence the promise to accept part in satisfaction of
the whole of a liquidated demand is not binding, but if sus-
tained by any consideration whatever, however insignificant
or technical, if valuable, it will be enforced. *Marshall v.
Bullard,* 114 Iowa, 462. "It is well established that the set-
tlement of a disputed claim is a sufficient consideration for
the agreement of settlement." *Keck v. Insurance Co.,* 89
Iowa, 200, and cases cited; *Everts v. Rose Grove Dist. Tp.,*
77 Iowa, 37; *Treat v. Price,* 47 Neb. 875 (66 N. W. Rep.
834). The numerous decisions cited by appellee holding
agreements to compromise without consideration are based
on findings that the claims were undisputed, and are not ap-
plicable to the facts as defendant's testimony tended to es-
tablish them. If defendant held a balance of $6,883.57, out
of which he, in good faith, contended that he was entitled to

$2,878.72, and the plaintiff that he should have but $1,-608.35, and the defendant tendered his check of $4,004.75 on the condition that it should be accepted in settlement of the amount due plaintiff, over and above compensation for his services, and this was so accepted, there was an accord and satisfaction, by which both parties are bound, as, by accepting, plaintiff assented to the condition. *Keck v. Insurance Co., supra; Perkins v. Headley,* 49 Mo. App. 556; *Fuller v. Kemp,* 138 N. Y. 231 (33 N. E. Rep. 1034, 20 L. R. A. 785). The plea of settlement should have been submitted to the jury. As payment of costs and expenses by defendant was not put in issue by the pleadings, the court rightly held they might not be allowed. Oher errors assigned are disposed of by what has been said, or will not be likely to arise on another trial.—REVERSED.